UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Otis Mays,                                                         Civil No. 22-2403 (DWF/ECW)

           Plaintiff,

v.                                                                 MEMORANDUM
                                                                   OPINION AND ORDER
Travis Yarbrough, Richard Waller, and
John Doe, *in their individual and official
capacities*,

           Defendants.


# INTRODUCTION

This matter is before the Court on Defendants Travis Yarbrough, Richard Waller, and John Doe's motion to dismiss. (Doc. No. 51.) *Pro se* Plaintiff Otis Mays opposes the motion. (Doc. No. 72.) For the reasons set forth below, the Court grants Defendants' motion.

# BACKGROUND

Mays's allegations against Defendants stem from his arrest in 2019. A friend drove Mays to the Hennepin County Courthouse. (Doc. No. 1 ("Compl.") at 5.) When Mays arrived, FBI special agents Yarbrough and Waller asked him if he was Otis Mays. (*Id.*) Mays stated that he was, and the two agents placed Mays under arrest pursuant to two active arrest warrants.[1] The agents knocked Mays to the ground and put his arms

---

[1] See *United States v. Mays*, No. 19-cr-76, Doc. No. 3 (filed Mar. 12, 2019); *United States v. Mays*, No. 19-cr-75, Doc. No. 3 (filed Mar. 12, 2019).

behind his back. (*Id.*) Mays repeatedly told Yarbrough and Waller that his shoulder was injured and that he could not put his arm behind his back. (*Id.*) They ignored Mays's pleas and continued to place his arms behind his back. (*Id.* at 5-6.) Mays asserts that when he asked Waller to let go of his right arm, Waller instead applied more pressure. (*Id.* at 6.)

Yarbrough and Waller searched Mays and then placed him in handcuffs. (*Id.*) The agents then drove Mays to the FBI field office. (*Id.* at 6-7.) On the way, Mays was read his *Miranda* rights twice. (*Id.* at 7.) He was then brought to an interrogation room. (*Id.*) Mays asserts that Waller told him about a law called the "1001 law," which Mays interpreted to mean that if he exercised his right to remain silent, then he "could be charged." (*Id.*)

Mays was also asked to unlock his phone. (*Id.*) He felt like he had to, so he did. (*Id.*) He tried to lock it before Yarbrough or Waller could take the phone, but "it was snatched out of [his] hand." (*Id.*) Mays told the agents that they could not search his phone, but Waller began "to do just that." (*Id.*) Waller then left the room with Mays's phone. (*Id.*)

Lastly, Mays alleges that Waller "intentionally applied pressure to [his] damage[d] shoulder" several times during the interview. (*Id.* at 8.) He asserts that Yarbrough and an unknown agent, John Doe, were present when this happened but failed to intervene. (*Id.*)

Mays brings this action against Yarbrough, Waller, and John Doe, alleging violations of the First, Fourth, Fifth, Eighth, and Fourteen Amendments. He alleges that

2

Waller used excessive force during the interrogation and asserts that Yarbrough and Doe failed to intervene. He similarly alleges that Waller and Yarbrough used excessive force when they arrested him. He also alleges that Yarbrough and Waller violated his right to remain silent and illegally searched his cell phone.

Defendants now move to dismiss these claims. Mays opposes the motion.

## DISCUSSION

### I.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

In addition, the Court notes that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Even so, a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

3

## II.     Official-Capacity Claims

Mays brings these claims against Defendants in their individual and official capacities.  "[I]t is well-settled that *Bivens* actions may be brought against individual defendants only in their personal, rather than official, capacities." *Hussein v. Sessions*, No. 16-cv-780, 2017 WL 1954767, at *3 (D. Minn. May 10, 2017); *see also Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982) ("*Bivens* and its progeny do not waive sovereign immunity for actions against the United States.").  Mays's claims against Defendants in their official capacities are therefore dismissed with prejudice.

## III.    Individual-Capacity Claims

Mays brings various claims against Defendants in their individual capacities under *Bivens*.  In *Bivens*, the Supreme Court "held that it had authority to create a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022) (internal quotations and citation omitted).  In the past fifty years, the Court has implied only two additional causes of action:  "first, for a former congressional staffer's Fifth Amendment sex-discrimination claim . . . and second for a federal prisoner's inadequate-care claim under the Eighth Amendment." *Id.* at 490-91.  The Court has emphasized that "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id.* at 491 (internal quotations and citation omitted); *see also Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) (concluding that there is a "presumption against creating new *Bivens* actions").

Courts have utilized a two-step inquiry when determining whether an implied cause of action is available to a plaintiff. First, the Court must determine whether the "case presents a new *Bivens* context." *Egbert*, 596 U.S. at 492 (internal quotations and citation omitted). In other words, the Court must decide whether the case is "meaningful[ly] different from the three cases in which the Court has implied a damages action." *Id.* (internal quotations and citation omitted).

"Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (internal quotations and citation omitted). The Court has not provided an exhaustive list of special factors but has instructed "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* at 492-93 (internal quotations and citation omitted).

A.   **New Context**

In their motion to dismiss, Defendants argue that each of Mays's claims arise in a new context. The Court's "understanding of a 'new context' is broad." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). "Even 'small' differences can be 'meaningful.'" *Ahmed*, 984 F.3d at 568 (citation omitted).

Mays alleges violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. Mays's claims under the First and Fourteenth Amendment clearly arise in new contexts. In *Egbert*, the Court noted that it has "never held that *Bivens* extends to First Amendment claims." *Egbert*, 596 U.S. at 498. Additionally, *Bivens* has not been

5

extended to Fourteenth Amendment claims, because "by its very terms, [the Fourteenth Amendment] applies only to state actors, not to federal officials." *Clutts v. Lester*, No. 20-cv-80, 2023 WL 3901489, at *4 (N.D. Iowa June 8, 2023).

"A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Mays brings a claim under the Fifth Amendment, arguing that Defendants violated his right to remain silent. The Supreme Court has recognized a *Bivens* cause of action under the Fifth Amendment for sex-discrimination claims but not for *Miranda* violations.[2] Additionally, Mays brings claims under the Eighth Amendment. Because these claims relate to Mays's treatment as a pretrial detainee, his excessive-force claim is analyzed under the Fifth Amendment Due Process Clause, not the Eighth Amendment. *See Clutts*, 2023 WL 3901489, at *5 n.2 ("Courts analyze excessive force claims of pretrial detainees under the due process clause."). These claims are not related to sex discrimination or inadequate medical care and are thus unlike the Fifth and Eighth Amendment *Bivens* causes of action. These claims arise in new contexts.

---

[2] In addition, Mays's Fifth Amendment claim regarding a violation of his *Miranda* rights is without merit, as Mays does not allege that his statements were compelled or used in a criminal case. *See Hannon v. Sanner*, 441 F.3d 635, 637 (8th Cir. 2006) ("Statements obtained in violation of the *Miranda* rule are not 'compelled.'"). The Court cannot create a cause of action under the Fifth Amendment related to this *Miranda* violation because Mays has not implicated the Fifth Amendment.

Mays's remaining claims relate to a search and seizure under the Fourth Amendment. Mays asserts that Defendants used excessive force during his arrest and interrogation, failed to intervene, and conducted a warrantless search of his phone. In *Bivens*, the Supreme Court recognized a cause of action under the Fourth Amendment based on claims that "arose out of a warrantless search and an illegal arrest." *Ahmed*, 984 F.3d at 568. "Specifically, federal law-enforcement officers had threatened to arrest [Bivens's] entire family as they shackled him; searched [his] apartment from stem to stern; and after booking and interrogating him, subjected [him] to a visual strip search." *Id.* (internal quotations and citation omitted). In contrast, Mays was arrested pursuant to two active arrest warrants. He was arrested in public, at the Hennepin County Courthouse, not at his home. Defendants did not search his home or threaten his family. Rather, Defendants allegedly searched Mays's phone without a warrant. The Court concludes that this case meaningfully differs from *Bivens*, as the case involves different actions and different injuries.

Overall, each of Mays's claims would extend *Bivens* to a new context.

**B.     Factors**

The Court next must determine whether there are any "special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (internal quotations and citation omitted).

The Supreme Court recently declined to recognize a new *Bivens* action for First Amendment retaliation claims, because extending *Bivens* to these claims would increase

7

social costs, including "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* at 499 (internal quotations and citation omitted). The Court concludes that the same reasoning cautions against extending *Bivens* to Mays's First Amendment claim, as Congress is better suited to weigh the costs and benefits of imposing damages for First Amendment violations.

Additionally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Id.* at 493 (internal quotations and citation omitted). The alternative remedial structure need not afford the party "rights to participation or appeal." *Id.* at 498. Rather, "*Bivens* is concerned solely with deterring the unconstitutional acts of individual officers—*i.e.*, the focus is whether the Government has put in place safeguards to preven[t] constitutional violations from recurring." *Id.* (internal quotations and citation omitted).

The Inspector General Act authorizes inspectors general to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," including FBI agents, and may "refer such allegations to the Office of Professional Responsibility or the internal affairs office of the appropriate component of the Department of Justice." 5 U.S.C. § 413(b)(2). Any person may report wrongdoing or misconduct by an employee of the Department of Justice, and individuals may submit complaints via mail, phone, fax, or online. *See* U.S. Department of Justice Office of the Inspector General, *Violation of Civil Rights or Civil Liberties Complaints*, https://oig.justice.gov/hotline/civil_rights_complaint (last visited Jan. 8, 2024). Mays also could have submitted a complaint with an FBI field office. "So long as Congress or

the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 597 U.S. at 498.

"[R]ecognizing a cause of action under *Bivens* is a disfavored judicial activity" *id.* at 491, and the Court concludes that the above factors caution against extending *Bivens* to Mays's causes of action. The Court therefore grants Defendants' motion to dismiss.

## CONCLUSION

For the reasons outlined above, Mays's claims against Defendants, in their individual and official capacities, are dismissed with prejudice.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss (Doc. No. [51]) is **GRANTED**.

2. Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 18, 2024        s/Donovan W. Frank
       DONOVAN W. FRANK
       United States District Judge